## LEON P. WILSON v. THE STATE.

### No. 7783.    Decided ˙November 7, 1923.

#### 1.—Assault to Murder—Aggravated Assault—Deadly Weapon—Rule Stated.

Before a conviction of aggravated assault can be sustained it must appear from the evidence that the weapon was either *per se* a deadly weapon, or was by the manner of its use calculated to inflict death or serious bodily injury, or that serious bodily injury was in fact inflicted therewith, and neither one of these elements being shown in the instant case, the judgment must be reversed and the cause remanded. Following Hamilton v. State, 60 Texas Crim. Rep., 258, and other cases.

#### 2.—Same—Argument of Counsel.

It having developed in the testimony that appellant had been indicted ˙for murder on two occasions, but had never been tried in either, the argument of the county attorney that the testimony showing thus, and defendant had never been prosecuted for murder, it was the jury's duty to make up for that, and to assess his punishment and find him guilty in this case, was reversible error, and this, although the court verbally instructed the jury not to consider this argument.

Appeal from the District Court of Eastland. Tried below before the Honorable E. A. Hill.

Appeal from a conviction of aggravated assault; penalty, a fine of $1,000 and nine months confinement in the county jail.

The opinion states the case.

*Chastain, Judkins & Chastain,* and *Burkett, Orr & McCarty,* for appellant.

*Grover C. Morris,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Appellant was indicted for assault with intent to murder one Long. He was convicted of an aggravated assault and his punishment assessed at a fine of one thousand dollars and nine months imprisonment in the county jail.

A great many questions are raised by the record, only two of which we think it necessary to discuss. Appellant had been suspected of illegally handling intoxicating liquor and we gather from the record that his house had been searched more than once. On the day before the alleged assault Long had made an affidavit for a search warrant and in company with officers in the absence of appellant again searched his premises. No intoxicating liquor was found at this time. Appellant claimed that some of his property was destroyed and the furniture in his house very much disarranged as a result of this search, and he became incensed thereat, and learned that Long had been instrumental in inaugurating it. As to whether any property was in fact destroyed, injured or disarranged during the search was controverted by the State. On the night of the day following the search, appellant made the assault on Long out of which this prosecution grew.

It is contended by appellant that the record wholly fails to show the instrument used by appellant was *per se* a deadly weapon, or was by the manner of its use a weapon calculated to inflict death or serious bodily injury, and that no evidence was introduced showing serious bodily injury to have been inflicted, and that under this state of the record the conviction for aggravated assault was not warranted and should not be permitted to stand.

Long's testimony was to the effect that he was struck from behind without knowing who was inflicting the blows. He exhibited to the jury a scar on the back of his head and on the side of his head and stated that he was knocked to the ground and crawled under an automobile and was struck on the hip a couple of times which resulted in bruising it. He did not pretend to know what he was struck with.

Another witnes for the State said:

"I could not tell you exactly what kind of a weapon Leon Wilson was using at the time he hit Long, but it looked to be a stick about that big (indicating) and about that long (indicating) about the size of the big end of a billiard cue. I would not think it was that stick (indicating). It looked like the big end of a billiard cue only it looked the same size all the way along it. It looked larger to me than this stick (indicating) and it looked perfectly smooth. . . . As to whether I would swear that stick you show me was not the stick that the defendant hit him with, I would swear it don't look like it, but I would not swear it was the stick or was not."

Another witness testified:—

"I could just see the stick that Leon Wilson was using from where I was standing. I saw the stick. From where I was standing the

stick looked like a billiard cue, the big end. It looked larger than that stick (indicating) to me. I could not tell from where I was standing if it was smooth or rough. I could not say if it was a smooth stick or a rough one as he was out of the light there on the sidewalk. . . . I could not swear that this was not the stick used. I do not know if it was or not."

A witness for appellant identified a stick produced by him and it is evidently to this stick reference is made by the witnesses. This witness said:

"I saw Leon Wilson when he picked up this stick here and said he was going to whip this fellow. . . . He found this stick near the curb a few feet from my car, a few feet from where we were talking. It was just lying in the street. I saw him stoop down and pick up something and naturally looked and saw him pick up that stick. I am certain that that is the stick: That stick has been in Wilson's possession part of the time and part of the time in mine. . . . I kept the stick until next morning. Then I turned it over to Leon Wilson. I never did notice any blood on this stick. I have not made any changes in this stick. It was trimmed up like that when I first saw it. It was trimmed up like that when he used it."

Another witness for appellant testified in substance; that he saw a stick something like the stick exhibited to him at the trial but could not swear it was the identical stick; that it was about the size of the one Wilson had, but looked whiter; that the stick shown him was about the description of the stick appellant had in his hand; that he could not tell if it was the weight of the stick then shown him; that he did not have the stick in his hands. Appellant identified the stick stating that at the time he saw Long he made up his mind he was going to whip him on account of him being connected with the raid upon his premises and that he picked up the stick on the street; that he had no idea of killing anybody but just wanted to give Long a whipping. A witness called in rebuttal by the State testified relative to the instrument as follows:—

"I saw the stick. I do not know if that (indicating) is the stick or not. It is about the right length for the stick, and I believe if that is the stick that the bark has been trimmed off one end of it. I think the stick had the bark on one end of it when he was struck. It looked to be larger then, and that is the reason I think the bark was trimmed off of it. That is about the right length of the stick. . . . That stick looks to be eighteen or nineteen inches long. The biggest place on that stick is about one and one quarter inches in diameter. I could not say as to just what that stick would weigh. I would not think it would weigh a pound."

Another witness called in rebuttal by the state said:

"That club was about the size of my arm. It was about that long (indicating). As to whether it appeared to be smooth or rough, it

did not look like a ball bat or a piece of a billiard cue to me, but really looked like a club where you would cut a sapling and cut the bark off. It looked to be a club bigger than that one (indicating) and I believe that it was longer than that one. As to whether I am positive that it was longer and bigger than this club, I believe I am. I believe it was bigger. I was about eight or ten feet from that club at that time. I saw the club plainly. I saw him holding it behind him. I did not know the names of either of the men at the time.''

However, this witness refused to swear that the stick shown him was not the one used. The foregoing is substantially all of the evidence relating to the instrument with which the assault is claimed to have been made. It will be observed that no physician was called to testify as to the deadly character of the instrument; neither were any witnesses offered who intimated that the wounds produced were serious bodily injuries.

In Smith v. State, 61 Texas Crim. Rep., 349, 135 S. W. Rep., 153, the facts were very similar to those presented by the record in the present case. If Judge Davidson had been writing with reference to the present facts his language could not have been more applicable. He says:

''The indictment charged an assault with intent to murder without setting out the weapon or means used. In submitting the issue of aggravated assault the Court instructed with reference to the use of a deadly weapon. We deem it unnecessary to detail the testimony in regard to the weapon used further than to state that it was variously described as a stick or baseball bat or grubbing hoe handle and about two inches thick at the larger end and not so thick at the other. Its weight is not given. It is not shown to be a sound, heavy stick, and no other description is given of it tending to show its character, whether deadly or not. No witness testifies that it was a deadly weapon, and, as we recall the record there is no evidence that it inflicted any injury of a serious nature.''

Before a conviction for an aggravated assault can be sustained arising from facts similar to those here presented, it must appear from the evidence that the weapon was either *per se* a deadly weapon, or was by the manner of its use calculated to inflict death or serious bodily injury, or that serious bodily injury was in fact inflicted therewith. Neither one of these elements are shown by the record before us. See Russell v. State, 158 S. W. Rep., 547, Hamilton v. State, 60 Texas Crim. Rep., 258, 131 S. W. Rep., 1127; Washington v. State, 53 Texas Crim. Rep., 480; 110 S. W. Rep., 751; Bangs v. State, 93 Texas Crim. Rep., 310, 247 S. W. Rep., 511.

The only other point we think it necessary to discuss is that presented in bill of exception number six. It had developed in the tes-

timony that appellant had been indicted for murder on two occasions but had never been tried in either. Appellant having testified in his own behalf as a witness this evidence became. admissible upon the question of his credibility. The assistant county attorney in his argument in the jury used substantially the following language:

"Gentlemen of the Jury, the testimony shows in this case that this defendant has twice been indicted for murder in this county, and has never been prosecuted for those murders, I think it's your duty to make up for that in assessing his punishment in this case."

The court verbally instructed the jury that they should not consider this argument, but it is contended that it was so grossly improper that its harmful effect could not be cured by such instruction. With this contention we agree. The rule stated by Mr. Branch in his Annotated Penal Code, page 204, under Section 361, is as follows:

"Before a reversal will be authorized even on account of improper argument of state's counsel, it must clearly appear that the remarks were improper and that they were of a material character and such as under. the circumstances were calculated to injuriously affect the rights of accused."

Many authorities are cited in support of this proposition. It is only in extreme cases this court feels called upon to reverse a judgment on account of argument of counsel unless he has violated some statutory provision, or injected into the case facts of a harmful character which were not in evidence. We are constrained to hold this to be an extreme case. The argument was so manifestly unfair that viewed in the light of the evidence and the severe penalty inflicted we would not be justified in holding that the argument was harmless even though the court verbally instructed the jury not to regard it. The evidence failing to show that the instrument was a deadly weapon or that serious injury was inflicted, is wholly insufficient to sustain a verdict for an aggravated assault, yet this is the offence of which appellant was found guilty. The penalty inflicted would indicate that perhaps the jury, regardless of the court's instruction to the contrary, followed the suggestion of counsel representing the State and undertook to assess the penalty in the present case to make up for the fact that he had not been prosecuted upon the indictment for murder.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*